**IN THE**
**UNITED STATES COURT of APPEALS**
**EIGHTH CIRCUIT**

No. 10-3462

WESLEY IRA PURKEY,
Appellant,
v.
UNITED STATES OF AMERICA,
Appellee.

**COUNSEL'S (ORDERED) RESPONSE TO APPELLANT'S *PRO SE* MOTIONS TO**
**REMOVE COUNSEL, PROCEED *PRO SE* AND DISMISS HIS APPEAL**

Pursuant to this Court's September 1, 2011, Order, Teresa L. Norris and Gary E. Brotherton, appointed counsel for Wesley Purkey, appellant, provide the following response to Mr. Purkey's *pro se* motions to remove undersigned counsel, proceed *pro se* and dismiss this appeal. As addressed in detail below, counsel request this Court to order remand to the District Court for: (1) discovery and a hearing on the conditions of confinement Mr. Purkey endures; (2) mental health evaluations and a hearing to determine Mr. Purkey's competence to waive and be executed; and (3) a hearing to determine whether Mr. Purkey is truly making a knowing, intelligent, and voluntary decision to waive substantial rights – waiver of which will undoubtedly result in his execution.

**Essential Facts**

Mr. Purkey suffers from "severe chronic mental disease." *Treatment Recommendations of Dr. Peterson* at 2.[1] (DOC 44)[2] "[T]here [is] an organic basis for his loss of emotional control, rage or rage-like anxiety responses, and self-defeating behaviors." *Id.* He deals with depression, anxiety and bipolar disorder. *Treatment Recommendations of Dr. Peterson* at 3. Mr. Purkey needs active psychiatric medication treatment for these illnesses. *Id.* at 8.

Mr. Purkey was medicated by the Kansas Department of Corrections, even before his admission to the Bureau of Prisons. He was, likewise, medicated before and during trial – both by the Corrections Corporation of America (CCA) and by the Bureau of Prisons. With Dr. Peterson's recommendations and the district court's intervention before trial, Purkey "was treated at CCA with 3.0 mg Klonopin daily (1.5 mb twice per day), 100 mg Zoloft daily, and 200 mg Tegretol three times per day." *Treatment Recommendations of Dr. Peterson* at 1. When USP–Leavenworth discontinued the Klonopin, Purkey suffered "a critical deterioration of his mental functioning, marked agitation, anxiety-induced exhaustion, diminished concentration, and angry outbursts." *Id.*

During trial, testimony was offered in sentencing concerning the importance of medications to relieve Purkey's prominent mental health symptoms – symptoms, which interfere with his ability to communicate calmly and rationally with counsel. William

---

[1] 1 Stephen E. Peterson, M.D.

[2] "DOC" refers to the docket number in the district court.

Grant, M.D., of the federal Medical Center in Springfield, Missouri, testified at trial that he prescribed Tegretol, which stabilizes "unstable people," Zoloft, which is an anti-depressant that helps with obsessions, and Klonepin, which is an anti-anxiety medication. Transcript at 1409. These medications had also been prescribed by Dr. Peterson because, without the medications, Mr. Purkey was having uncontrolled rage attacks and was "close to being unable to work with [defense counsel], or anyone else." *Id.* at 1780.

Nearly four years ago, counsel sought an order from the district court compelling BOP to provide Mr. Purkey with necessary and essential medical treatment. The grounds for that motion were that:

> Mr. Purkey [wa]s receiving inadequate attention to relevant psychiatric needs. There [we]re no entries [in his SCU records] about his psychiatric functioning because those questions [we]re not being asked.

*Treatment Recommendations of Dr. Peterson* at 8.

Nevertheless, since at least December 18, 2006, Mr. Purkey has received no mental health treatment or medications at the Special Confinement Unit at USP Terre Haute. Mr. Purkey's "severe anxiety" and "self-defeating behaviors" – related largely to the lack of psychiatric treatment at the SCU – has made it extremely difficult at times for Mr. Purkey to work with counsel. The record throughout these 2255 proceedings documents that difficulty. Mr. Purkey has filed eight *pro se* motions to remove counsel and/or to dismiss his case and be executed:

1. In the district court:

a. February 14, 2007 (DOC[3] 7);

b. August 24, 2007 (DOC 28);

c. September 11, 2007 (DOC 32);

d. December 19, 2007 (DOC 57); and

e. December 2, 2009 (DOC 99).

2. In this Court:

a. December 10, 2010;

b. August 10, 2011;

c. August 22, 2011.

Purkey ultimately withdrew each of the first six *pro se* motions; the latter two await ruling by this Court.

In his "Motion to Withdraw Appeals" filed August 10, 2011, Mr. Purkey expresses a desire to allow him to withdraw his appeals and that desire is completely and explicitly related to conditions of confinement.

> Because of the protracted, ongoing and chronic constitutionally proscribed conditions of my death row confinement on the Special Confinement Unit that Purkey has been subject to for the past seven (7) years without resolve or remedy by law he request to withdraw these habeas proceedings rather than continue to suffer the plights of such conditions of confinement.

Para. 1. In his "Motion to Withdraw Counsel To Proceed Pro Se In These Appellate Proceedings and To Withdraw Appellate Proceedings" filed August 22, 2011, Mr. Purkey complains, *inter alia*, that counsel: (1) "will not allow Purkey to assist in these habeas

---

[3] "DOC" refers to the document number in the district court – MOW No. 4:06-cv-08001-FJG.

appellate proceedings," Para. 2; (2) have made decisions that will be "potentially devastating to Purkey because of the significance of this issue on his appeal," Para. 4; and (3) counsel are not sympathetic to his complaints about conditions of confinement, Para. 5.

### Response to Motion to Dismiss Appeal Due to Conditions of Confinement

In *Ford v. Wainwright*, 477 U.S. 399 (1986), the United States Supreme Court held:

> [T]he Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane. Whether its aim be to protect the condemned from fear and pain without comfort of understanding, or to protect the dignity of society itself from the barbarity of exacting mindless vengeance, the restriction finds enforcement in the Eighth Amendment.

*Id.* at 409-10.

In the context of a death-sentenced inmate's request to waive further judicial review of his convictions and sentence, the United States Supreme Court ordered a determination of "mental competence in the present posture of things, that is, whether [the inmate] has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Rees v. Peyton*, 384 U.S. 312, 314 (1966). In subsequent cases, the Court also required that the waiver of the right to pursue relief must also be "knowing, intelligent, and voluntary." *Whitmore v. Arkansas*, 495 U.S. 149, 165 (1990). *See also Demosthenes v. Baal*, 495 U.S. 731 (1990); *Gilmore v. Utah*, 429 U.S. 1012, 1013 (1976). The Court also has explicitly held that the questions of whether an inmate is

competent and whether his waiver of rights is knowing and voluntary are distinct questions. *Godinez v. Moran*, 509 U.S. 389, 400 (1993).

> The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings. The purpose of the "knowing and voluntary" inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced.

*Id.* at 401 n.12 (emphasis in original) (citation omitted).

The validity of a waiver "must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Because his decision is driven by his desire to escape the suffering caused by conditions of confinement, the undersigned counsel submit that Mr. Purkey's waiver is not "voluntary." His position is similar to "the pleas of the terminally ill for assisted suicide or the reasons cited for suicide generally. [His] position is paradigmatically suicidal. He will be free he claims, when he is dead. He plainly enlists the Court in his suicide." *United States v. Hammer*, 239 F.3d 302, 306 (3rd Cir. 2001) (Nygaard, J., voting for rehearing en banc). *See also* John H. Blume, *Killing theWilling: "Volunteers," Suicide and Competency*, 103 Mich. L. Rev. 939 (March 2005).[4]

---

[4] The Blume essay

> offers some empirical comparisons between the characteristics of death-row inmates who have waived their appeals and been executed with those of people who commit suicide in the "free world." Several similarities are quite striking. Both groups contain disproportionately high percentages of white males, mentally ill individuals, and persons with substance abuse disorders.

When based entirely on deplorable conditions of confinement, any purported "waiver" of available judicial review of his convictions and death sentence is "void." *Groseclose ex rel. Harries v. Dutton*, 594 F. Supp 949 (M.D. Tenn. 1984). The fact that it is the day to day conditions rather than some other direct, external coercion is simply not relevant. "While a finding of coercion bears upon the voluntary aspect of the waiver, it is not a necessary prerequisite to reach the conclusion that a waiver was not made knowingly, intelligently, and voluntarily." *Wilkins v. Bowersox*, 145 F.3d 1006, 1012 (8th Cir. 1998).

This case is analogous to *Wilkins* because in that case a capital defendant waived his right to counsel and plead guilty, but this Court rejected the state court's finding that the waiver of the right to counsel and right to trial was valid because:

> the uncontroverted testimony of the several doctors who had examined Wilkins all indicated that he was mentally disturbed and that his decisions to waive counsel and plead guilty were the product of his mental illness and immaturity and not rational decision making.

*Id.* at 1014.

Here, Mr. Purkey's desire to waive is a complete product of conditions of confinement. With respect to the "facts" concerning his conditions of confinement, counsel can only state that: (1) contrary to Mr. Purkey's assertions in the "Motion to Withdraw Counsel," counsel are sympathetic to his concerns; (2) counsel are aware that Mr. Purkey has complained virtually daily of deplorable confinement conditions since counsel's appointment approximately five years ago; and (3) counsel are aware generally

---

*Id.* at 942. Mr. Purkey fits that profile precisely.

that Mr. Purkey is not alone is his complaints and that many of the counsel representing the federal death row inmates, including the undersigned, have been repeatedly involved in making complaints to both Warden and legal counsel.

In short, while counsel cannot verify the accuracy of the specific "facts" cited by Mr. Purkey in his motion, counsel do believe that his statements should not be discounted and warrant discovery and a hearing on the matter. While counsel recognize that this is not a lawsuit about prison conditions, this Court must take into account those facts "for the purpose of considering the issue" raised by Mr. Purkey – whether the conditions are so deplorable that Mr. Purkey's desire to live and fight his appeals have simply been overborne by the horrible conditions he lives in daily. If so, the solution is to remedy the prison conditions rather than to execute the man suffering because of the bad prison conditions.

For these reasons, counsel request that this Court remand to the District Court for purposes of discovery and a hearing on this issue. Alternatively, counsel suggest that this Court deny Mr. Purkey's motion to waive these 2255 appeals because his decision, a product completely of being worn down by conditions of confinement, is not "voluntary." "Court's indulge every reasonable presumption against waiver" of fundamental rights. *Johnson*, 304 U.S. at 464.

### Response to Motion to Dismiss Counsel, Allow Pro Se Representation, and Dismiss Appeal

Counsel are responding to this motion due to the order of this Court to do so. In doing so, counsel acknowledge that there have been difficulties in the attorney-client

relations with Mr. Purkey but will not respond to the specific allegations set forth in his motion due to attorney-client privileges. Counsel will state generally, however, that the overwhelming majority of specific "statements" Mr. Purkey attributes to counsel were not made. To be clear, however, counsel are NOT saying that Mr. Purkey is being untruthful or attempting to deceive this Court. Counsel ARE saying Mr. Purkey clearly does not rationally understand the communications and discussions with counsel, which raises significant doubt of: (1) his competence; and (2) his ability to make a knowing, intelligent, and voluntary waiver. Thus, counsel must request that this Court not relieve counsel and allow Mr. Purkey to proceed pro se at this time. Counsel request that this Court remand to the District Court for mental health evaluations and a hearing to determine competence and that Purkey adequately understands all of the dangers and pitfalls of proceeding *pro se* and requesting his own execution.

I. **There is No Right to *Pro Se* Representation in Habeas Proceedings Once a Death-Sentenced Inmate Has Sought and Obtained Court-Appointed Counsel.**

The Sixth Amendment provides a criminal defendant with the right to counsel at trial or "a constitutional right to proceed [to trial] *without* counsel when he voluntarily and intelligently elects to do so." *Faretta v. California*, 422 U.S. 806, 807 (1975). Likewise, the Fourteenth Amendment rights to due process and equal protection require that counsel be provided in the first appeal as of right to represent indigent defendants. *Coleman v. Thompson*, 501 U.S. 722, 756 (1991) (quoting *Douglas v. California*, 372 U.S. 353, 357 (1963)); *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). Nonetheless, no portion of the United States Constitution affords a "right" for an appellant from a criminal

conviction to represent himself on direct appeal. *Martinez v. Court of Appeal of California, Fourth Appellate District,* 528 U.S. 152, 163 (2000). As the Court recognized in *Martinez*:

> The Sixth Amendment identifies the basic rights that the accused shall enjoy in "all criminal prosecutions." They are presented strictly as rights that are available in preparation for trial and at the trial itself. The Sixth Amendment does not include any right to appeal.

*Id.* at 159-60. The Court found that the right to due process under the Fourteenth Amendment also does not include a right to self-representation, in part, because the balance between the competing interests of the state and the defendant are different on appeal. At trial, the criminal defendant "retains a presumption of innocence," while on appeal the person has been found guilty. *Id.* at 162. At trial, the criminal defendant has no choice whether to engage in the proceedings at all, while on appeal "it is ordinarily the defendant, rather than the State, who initiates the appellate process." *Id.* (quoting *Ross v. Moffitt,* 417 U.S. 600, 610 (1974)). Thus, the right afforded the defendant, by statute, is the right to appeal or not. Once the defendant chooses to appeal, the defendant has no corollary right to self-representation. *Id.* at 163. Moreover, the defendant has no "right" to participate in oral argument or even to be present for oral argument. *Id.* at 163-64 (citing *Price v. Johnson,* 334 U.S. 266, 284 (1948) (no right to present oral argument) and *Schwab v. Berggren,* 143 U.S. 442 (1892) (no right to be present during appellate proceedings).

The Court in *Martinez* observed, however, that the courts "may still exercise their discretion to allow a lay person to proceed *pro se*" or to allow a person to attend or

present oral argument. *Id.* at 163. Likewise, the Court observed that, while there is no right to self-representation, most courts "protect the ability of indigent litigants to make pro se filings." *Id.* at 164. This is sufficient to allow the criminal defendant to be heard on appeal if he or she is dissatisfied with appointed counsel's representation.

With respect to collateral attacks challenging convictions and sentences beyond the direct appeal there is no constitutional right to counsel. *Pennsylvania v. Finley*, 481 U.S. 551, 555-56 (1987) (the Court has "never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions"). *See also Coleman*, 501 U.S. at 752; *Murray v. Giarratano*, 492 U.S. 1, 7 (1989). Thus, any right to counsel must be provided by statute.

Here, Congress has provided Mr. Purkey with the right to collaterally challenge his convictions and death sentence, 28 U.S.C. § 2255, and the right to appointed counsel in these proceedings, 18 U.S.C. § 3599(a)(2). In *McFarland v. Scott*, 512 U.S. 849, 855 (1994) (quoting 21 U.S.C. § 848(q)(7), which was repealed upon enactment of 18 U.S.C. § 3599), the United States Supreme Court addressed Congress' recognition of the need for qualified counsel due to "the seriousness of the penalty and . . . the unique and complex nature of the litigation."

> Congress' provision of a right to counsel under § 848 (q)(4)(B) reflects a determination that quality legal representation is necessary in capital habeas corpus proceedings in light of "the seriousness of the possible penalty and . . . the unique and complex nature of the litigation." § 848(q)(7). An attorney's assistance prior to the filing of a capital defendant's habeas corpus petition is crucial because "the complexity of our jurisprudence in this area . . . makes it unlikely that capital defendants will be able to file successful petitions for collateral relief without the assistance of persons learned in the law."

*McFarland*, 512 U.S. at 855-56 (quoting *Murray v. Giarratano*, 492 U.S. 1, 14 (1989) (Kennedy, J., joined by O'Connor, J., concurring in the judgment)).

In accord with the Congressional mandates, this Court–*at Purkey's request*–appointed the undersigned counsel to represent him in this unique and complex litigation. His brief in this Court has not yet been filed. Indeed, this Court stayed the briefing schedule until these matters are resolved.

It is notable that Mr. Purkey's motion makes no assertion of a desire to represent himself. His complaints about his representation are that he believes counsel "will not allow Purkey to assist in these habeas proceedings." Para. 2. Likewise, Mr. Purkey believes counsel's "obstinacy in this matter will not be resolved, and thereby [is] potentially devastating to Purkey because of the significance of this issue on his appeal." Para. 4. Clearly, he is frustrated with counsel. But equally clear is that his request to go *pro se* is not because he desires to represent himself but because he is frustrated with counsel.[5]

---

[5] In *Florida v. Nixon*, 543 U.S. 175 (2004), the Court recognized that some decisions concerning "basic trial rights" must be made by the defendant and require that "an attorney must both consult with the defendant and obtain consent to the recommended course of action." These basic trial rights include the determination of "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Id.* (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). For other matters, "[a]n attorney undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy," *id.* (citing *Strickland v. Washington*, 466 U.S. **Error! Main Document Only.**668, 688 (1984)), but this "obligation . . . does not require counsel to obtain the defendant's consent to 'every tactical decision,'" *id.* (citing *Taylor v. Illinois*, 484 U.S. 400, 417-418 (1988) (an attorney has authority to manage most aspects of the defense without obtaining his client's approval)).

**II. This Court Should Allow Mr. Purkey to Proceed *Pro Se* Only if The Court is Satisfied that he is Competent and is Making a Knowing, Intelligent, and Voluntary Waiver of the Right to Counsel.**

The undersigned counsel take no position on whether Mr. Purkey should be permitted to proceed *pro se*, but submit that *if* Mr. Purkey is to be allowed to proceed *pro se* and/or to withdraw his appeal, this Court must ensure that he is competent and is making a knowing, intelligent, and voluntary waiver of his rights. The Court must evaluate Mr. Purkey's "mental competence in the present posture of things, that is, whether [the inmate] has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Rees v. Peyton*, 384 U.S. 312, 314 (1966). This Court has "held that in the light of the Supreme Court's holdings in *Rees I* and *Gilmore v. Utah*, 429 U.S. 1012 (1976), it is possible for a defendant to make a *competent* waiver of the right to pursue further appellate relief from a sentence of death." *Singleton v. Lockhart*, 962 F.2d 1315, 1322 (8th Cir. 1992) (emphasis added).

In *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803 (9th Cir. 2003), the Ninth Circuit held that a petitioner is also entitled to be competent in federal habeas proceedings brought under 28 U.S.C. § 2254. This right flows from the right to counsel.

> In capital cases, prisoners challenging their convictions or sentences in federal court have a right to assistance of counsel. *See* 21 U.S.C. §848(q)(4)(B). This prescription reflects Congress's belief that "federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty," *McFarland v. Scott*, 12 U.S. 849, 859, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994), and that meaningful assistance of counsel is essential to secure federal constitutional

> rights. Counsel's assistance, however, depends in substantial measure on the petitioner's ability to communicate with him. And if meaningful assistance of counsel is essential to the fair administration of the death penalty and capacity for rational communication is essential to meaningful assistance of counsel, it follows that Congress's mandate cannot be faithfully enforced unless courts ensure that a petitioner is competent.

*Id.* at 813.

Subsequently, the Ninth Circuit held that the right to competence in habeas proceedings extended to an appeal from the denial of relief in the District Court. *Nash v. Ryan*, 581 F.3d 1048 (9th Cir. 2009).

> Although there are fundamental differences between district and appellate court proceedings, there is one aspect of the entire process that remains the same: the statutory right to assistance of counsel. We fail to see why that statutory right does not also encompass "meaningful assistance" on appeal. And, just as the capacity for rational communication is essential to meaningful assistance of counsel in the district court, counsel's ability to communicate with a petitioner may in some cases be essential to the successful prosecution of an appeal.

*Id.* at 1053.

The Seventh Circuit has likewise held that a habeas petitioner on appeal has the right to be competent. In *Holmes v. Buss*, 506 F.3d 576 (7th Cir. 2007), the district court found the petitioner competent but denied him the opportunity to cross-examine the state's mental health expert. *Id.* The Seventh Circuit, in an opinion by Judge Posner, held for the petitioner, and remanded the case to the district court for further exploration of the petitioner's competence to assist his appellate counsel and his prior competency while in the district court. *Id.* at 579, 583. The court pointed out how an incompetent client can interfere with the pursuit of his appeal:

> [H]e seems insanely preoccupied with a frivolous ground of appeal and oblivious to the other, more substantial, grounds that his lawyers wish to press, as well as severely distracted by fear of diabolical beings who are scheming against him, preventing him from reading any documents relating to his case.

*Id.* at 583-84.

Other courts of appeal have either assumed that the right to be competent in habeas proceedings exists or have resolved the competency issue on other grounds. *See Ferguson v. Secretary for Dep't Of Corr.*, 580 F.3d 1183, 1222 (11th Cir. 2009) (assuming there is right to be competent in habeas, the district court did not abuse discretion in denying the stay); *Pierce v. Blaine*, 467 F.3d 362, 373 (3d Cir. 2006) (refusing to accept review of a district court's decision to evaluate the petitioner's competency but noting that the order was "not clearly beyond the discretion of the district court in aid of its jurisdiction").

This Court has never held directly that there is a right to competency in habeas or 2255 proceedings but has assumed that there is such a right. *See Paul v. United States*, 534 F.3d 832, 847 n.7 (8th Cir. 2008) (finding no basis for a stay after assuming there is a statutory right to competence that extends to a habeas appeal). Counsel submit that this Court should adopt the ruling and reason of *Rohan*. Regardless, however, even if Mr. Purkey has no right to competence in these proceedings, he certainly cannot be allowed to dismiss counsel and these proceedings unless he is competent and making a knowing, voluntary, and intelligent waiver. *See Mata v. Johnson*, 210 F.3d 324, 329-30 (5th Cir. 2000) (When considering "the question of whether a death row inmate is competent to drop his collateral attack on his conviction and sentence," the court concluded "that a

habeas court must conduct an inquiry into the defendant's mental capacity . . . if the evidence raises a bona fide doubt as to his competency").

Counsel request a remand to the District Court with instructions to order mental health evaluations (both Court ordered and by experts retained by Mr. Purkey's counsel) and to hold a hearing to determine whether Mr. Purkey's waiver is competent and knowing, voluntary, and intelligent.

### Additional Response

Given his history of filing motions to waive his right to counsel or to dismiss and then withdrawing them, counsel believe there is a substantial chance Mr. Purkey may yet again change his mind. If that happens, counsel certainly request that he be allowed to proceed. *See Smith v. Armontrout*, 865 F.2d 1515, 1516 (8th Cir. 1989) (Arnold, J., joined by Gibson, J.) (appeal reinstated, even after dismissal, with a warning that the granting judges would not be disposed "to consider any further changes of mind" and the courts should "proceed to decide the merits . . . with all reasonable expedition"); *St. Pierre v. Cowan*, 217 F.3d 939, 940 (7th Cir. 2000) (adopting this Court's approach in *Smith v. Armontrout* as it "quickly and efficiently puts an end to endless vacillation and allows resolutions of cases); *United v. Hammer*, No. 04-9001 (3rd Cir. June 3, 2004) (attached) (following *St. Pierre* approach in 2255 proceedings of a death-sentenced inmate).

**Conclusion**

Wherefore, undersigned counsel respectfully suggest that this Court remand this matter to the district court for appropriate discovery, mental health evaluations, and a hearing.

Respectfully submitted,

| | |
|---|---|
| Teresa L. Norris, Esq. | Gary E. Brotherton, Esq. |
| P.O. Box 11744 | 601 W. Nifong Blvd., Ste. 1C |
| Columbia, SC 29211 | Columbia, Missouri 65203 |
| (803) 765-1044 (Phone) | (573) 875-1571 Phone |
| (803) 765-1143 (Fax) | (573) 875-1572 Fax |
| teresa@blumelaw.com | GEBrotherton@LegalWritesLLC.com |
| Co-counsel to Appellant | Co-counsel to Appellant |

By: /s/ Gary E. Brotherton
GARY E. BROTHERTON
Co-counsel to Appellant

CERTIFICATE OF SERVICE

This will certify that, on today's date, this motion was served upon the United States by filing via CM/ECF.

/s/ Gary E. Brotherton
Gary E. Brotherton

Dated: Columbia, MO
September 9, 2011