<u>United States Court of Appeals</u>
<u>For The Eighth Circuit</u>

**FILED**

MAR 15 2012

**MICHAEL GANS**
CLERK OF COURT

Wesley I. Purkey,

    Appellant/Petitioner,

V.

Case No. #10-3462

United States of America,

    Appellee/Respondent.

**RECEIVED**

MAR 15 2012

**U.S. COURT OF APPEALS**
~~EIGHTH CIRCUIT~~

<u>Motion To Suspend Appellate Proceeding</u>
<u>Because Purkey Is Being Denied The Right</u>
<u>To Assist IN Such Via USP/TH Staff Inter-</u>
<u>Ferring With his Ability To Communicate With</u>
<u>Habeas Counsel</u>

The Appellant Wesley I. Purkey (hereafter "Purkey"), acting Pro Se in this Matter Request the Court to Suspend these appellate proceeding until issues permeating Purkey's Death Row Confinement that is interferring with his Communication with both Counsel(s) and the

— 1 —

Court can be Resolved. In support of this Request Purkey states the following:

1. Purkey suffers debilitating Arthritis in both hands which is documented in his medical file. Not only have Counsel certified, but USP/TTH officials have certified that they cannot decipher Purkey's handwriting. In fact Prison official, Michael Stephens, SCA/Unit Manager has Repeatedly Rejected Correspondence and administrative Remedies presented to him by Purkey due to alleged illegible. Further, it is extremely painful for Purkey to write, particularly in the significant manner necessary in any meaningful communications with his habeas Counsel(s), to assist them in these capital appellate proceedings.

2. Under a campaign of Retaliation taken against Purkey by SCA staff for his

-2-

challenges being made to the conditions of his Death Row confinement and for aiding other Death Row inmates with such challenges to their conditions of confinement through the courts he has and continues to be denied access to both a typewriter and/or access to the unit law library.

3 An example of this campaign of Retaliation which both of Parker's habeas counsels are vividly aware of is:

After submitting grievances for being denied law library access for over a 10 day period Parker was escorted to the law library by C.O. A. Johnson, March 6, 2012. Leaving the Range and outside the view of the cameras on the Range C.O. Johnson began pressing Parker by the handcuffs behind his back, while C.O. Allen and Ofc. Newman on each side of Parker began a stream

of malicious derogatory remarks. C.O. Allen told Purkey, inter alia, that "you raped and murdered a 16 year old girl, you don't have nothing coming here." OIC Newman as well continued to mock and ridicule Purkey while escorting him to the law library. After a brief time in the law library, OIC Newman told Purkey his time was up. "Back space stuff up," he told Purkey. Under the threat of disciplinary action Purkey complied with Newman's order. Being escorted back from the law library by C.O. A. Johnson, Allen and OIC Newman, Johnson again began dragging Purkey by the handcuffs behind his back. Purkey seen a letter laying on the officers table that he had given Johnson earlier for mailing. It was tore up in several pieces. When Purkey asked Johnson if

-4-

that WAS the letter he had given him, Johnson told him, "you want to complain to your attorneys about us? Fuck you and them." "Rape another 16 year old girl, you piece of shit," Allen told Parker. Simultaneously Officer NEWMAN spit in Parker's face telling him, "you want more of this keep filing your grievance and Requesting law library."

4. In collusion with court administrator's practice officers, John Edwards, case worker and other SCU staff Parker is denied law library access. On ~~3/6/12~~ March 6, 2012 after being taken to the law library and shortly thereafter, Mr. Edwards witnessed Parker being in the law library told OFC Newman that, "I thought we agreed that he is not to be allowed law library access." OFC

-5-

Newman then ordered Parkey out of the law library under threat of disciplinary action.

5. On March 7, 2012 Parkey tried to address these issues with Warden Lockett for Resolution. Mr. Lockett cut Parkey off telling Parkey that, "if you want special treatment, I'm not giving you special treatment." In the past Mr. Lockett has stated that he needs to address these types of issues with "the victims families." See Exhibit (A) Attached!

6 In Collusion other scu staff have Denied Parkey Law Library access and in Retaliation of Parkey's complaints literally photocopied his legal mail addresses to his habeas Counsel. On March 8, 2012 Ofc Singleton picked up legal mail Parkey

was morning to Ms. Teresa Norris. A few minutes later Parker realizing that the envelope was not sealed asked for the letter back. OFC Singleton took out a half hours later brought the letter back telling Parker, "We are all tired of your complains." When Parker asked Singleton if he enjoyed reading the correspondence Singleton replied, "I made a copy of it."

7. Further Retaliation by Newman and SGT Steele include denying Parker meals as was done on March 8, 2012 at lunch time. Newman told Parker via other steff, "Continue making complaints and you will not be feed at all." This was one of several

-7-

Meels Newmea end other stefe heve Denied Purkey in a 90 Dey period.

Therefore, Purkey Request thot this Court Suspead these oppellote proceedings based on the eboce Reoscas Deaqing him the Right to essist his holeos Counser in the Same.

Respectfully Submitted

_Wesly Purkey_

Wesley I. Purkey #14670043 USP TH P.G. Box 33 Terre Houte, Ind 47808 oppellont Pro Se

## Certificote of Service

The undersign Did provide o true oud correct Copy of the foregoing vie U.S. Moel, postege prepoid oud oddress to;

−8−

Kathleen D. Mahoney
Asst U.S. Attorney
Charles Evans Whittaker Courthouse
400 E. 9th St., 5th Floor
K.C., MO 64106

On this 9th Day of March, 2012

<u>Wesley L. Parker</u>
Wesley L. Parker

8



**U.S. Department of Justice**

*Federal Bureau of Prisons*

*Federal Correctional Complex*
*Terre Haute, Indiana*

March 1, 2011

Mr. Paul Enzinna
Brown Rudnick LLP
601 Thirteenth Street NW, Suite 600
Washington, DC 20005

RE: Conditions at USP Terre Haute

Dear Mr. Enzinna:

I am writing in response to your letter requesting a meeting with me to express concerns regarding conditions in the Special Confinement Unit (SCU) at the Federal Correctional Complex (FCC) in Terre Haute, Indiana. I understand that you have also forwarded general concerns to our legal staff.

I am aware that previous wardens have met with legal counsel for SCU inmates to discuss specific issues regarding policy in that unit. However, I do not believe that such a meeting would be productive at this time. A review of your letter and subsequent email to legal staff reveals that the only complaints that have previously been brought to the attention of staff are the concerns with scheduling of telephone calls and the opening of legal mail. As was previously discussed with individual counsel regarding legal calls, every effort is made to arrange requested legal calls the day that the call is requested. A review of our records in the SCU reveals that, on average, staff schedule over three hundred legal calls per quarter. This is far in excess of the number of legal calls made to or from non-death sentence inmates at FCC Terre Haute. Additionally, with very rare exception the overwhelming majority of legal calls occur within 24 hours of the request from the inmate's counsel.

With regard to concerns over legal mail being opened, our mailroom staff follow the procedure outlined in Program Statement 5265.11, "Correspondence". In the event that mail is not appropriately marked, it is opened by mailroom staff. Once our unit team staff are

1

alerted by the inmate or inmate's attorney that this was intended to be legal mail, then staff advise the inmate's attorney of the appropriate markings. Again, by policy, if the mail is not properly marked, the mailroom staff will open it.

Many of the other, more generic issues cited in your email and letter have never been brought to the attention of institution staff and we continue to encourage your clients to utilize the informal resolution and administrative remedy processes to bring matters to the attention of appropriate staff. Without this process, the staff are unaware that inmates have concerns and cannot address them.

Again, I do not believe that a meeting would be productive at this time; however, if you believe that your clients still have concerns after utilizing the proper processes set forth in policy, I encourage you to schedule a meeting with our legal department and the unit manager. In the event that you feel these issues still require further attention, I will contact the U.S. Attorney's office and the victim's families and arrange for them to meet with us as they are also interested parties in the treatment of inmates and their conditions of confinement. It is my belief that if such a meeting becomes necessary, it will be best for everyone to share their concerns at the same meeting to reduce the likelihood of any miscommunication.

I trust this response addresses your concerns.

Sincerely,

Charles L. Lockett
Complex Warden

cc:     Rick Winter, Deputy Regional Counsel
        Paul Pepper, CLC Leader
        Katherine Siereveld, Attorney Advisor
        Michael L. Stephens, SCU Unit Manager

2