**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

**NO. 10-3462**

**WESLEY IRA PURKEY,**
**Appellant,**

**v.**

**UNITED STATES,**
**Appellee.**

*On Appeal from the United States District Court*
*for the Western District of Missouri*
*The Honorable Fernando J. Gaitan, Jr., Chief Judge*

———————————————————————

**APPELLANT'S REPLY BRIEF**

———————————————————————

Teresa L. Norris, Esq.
Blume Weyble & Norris, LLC
900 Elmwood Avenue, Ste. 101
Columbia, SC 29201
(803) 765-1044 (Phone)
(803) 765-1143 (Fax)
teresa@blumelaw.com
Co-counsel to Appellant

Gary E. Brotherton, Esq.
601 W. Nifong Blvd., Ste. 1C
Columbia, Missouri 65203
(573) 875-1571 Phone
(573) 875-1572 Fax
GEBrotherton@LegalWritesLLC.com
Co-counsel to Appellant

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................. i

TABLE OF AUTHORITIES .........................................................................ii

ARGUMENTS IN REPLY TO BRIEF FOR THE UNITED STATES...............1

     I.     Failure to Adequately Investigate and Present Mitigation Evidence .......................................................................................1

     II.    The District Court's Ruling............................................................9

     III.   The Denial of a Hearing.............................................................. 11

     IV.   Failure to Strike Mr. Duchardt's Affidavit ................................. 13

CONCLUSION........................................................................................ 15

CERTIFICATE OF COMPLIANCE............................................................ 16

CERTIFICATE OF FILING AND SERVICE ................................................ 17

# TABLE OF AUTHORITIES

**CASES**

*Cargle v. Mullin*, 317 F.3d 1196 (10th Cir. 2003)................................................2

*Cullen v. Pinholster*, 131 S.Ct. 1388 (2011)...........................................9

*Miller-El v. Cockrell*, 537 U.S. 322 (2003) ...................................... 9-10

*Pfeil v. Rogers*, 757 F.2d 850 (7th Cir. 1985)...................................... 14

*Porter v. McCollum*, 130 S. Ct. 447 (2009)........................................1

*Rompilla v. Beard*, 545 U.S. 374 (2005) ........................................ 1, 8

*Strickland v. Washington*, 466 U.S. 668 (1984) ...................................... 8, 10, 12

*Towns v. Smith*, 395 F.3d 2510 (6th Cir. 2005)....................................2

*United States v. DeBerry*, 2011 WL 6145345 (10th Cir. Dec. 12, 2011) ...................................................................... 10

*United States v. Griffith*, 301 F3d. 880 (8th Cir. 2002)..................................... 13

*United States v. Hammer*, 404 F.Supp.2d 676 (M.D. Pa. 2005) ....................... 13

*Wiggins v. Smith*, 539 U.S. 510 (2003).........................................*passim*

*Williams v. Norris*, 612 F.3d 941 (8th Cir. 2010)............................................ 12

*Williams v. Taylor,* 529 U.S. 362 (2000) ................................ 1, 7, 8, 10

**STATUTES**

28 U.S.C. § 2253 ................................................................... 10

**RULES**

F.R.C.P. Rule 56 ........................................................................................ 14

Local Rules, United States District Court for the Western District of Missouri,

    Rule 56.1 ........................................................................................ 14

## ARGUMENT IN REPLY TO BRIEF FOR THE UNITED STATES

**I.    Failure to Adequately Investigate and Present Mitigation Evidence.**

The essence of Mr. Purkey's claim is that counsel was ineffective in failing to adequately investigate, prepare, and present substantial mitigating evidence. *See Porter v. McCollum*, 130 S. Ct. 447 (2009); *Rompilla v. Beard*, 545 U.S. 374 (2005); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Williams v. Taylor,* 529 U.S. 362 (2000). As in *Wiggins,* the question is "whether the investigation supporting counsel's decision[s] . . . *was itself reasonable*." *Wiggins*, 539 U.S. at 523 (emphasis in original). As the Court observed in *Wiggins,* "investigations into mitigating evidence 'should comprise efforts to discover *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.'" *Id.* at 510 (quoting 1989 Guideline 11.4.I(C) (emphasis added)).

**Gary Hamilton**

The Government mockingly asserts that Mr. Purkey complains only that his brother, Gary Hamilton, was not interviewed in a "sensitive" manner. Brief at 43. Mockery aside, it is a "no-brainer" to realize that a single interview in the presence of counsel's teenage son and the witness' wife was not going to be the circumstances in which Mr. Purkey's brother would be open to revealing deeply personal information and details of sexual and physical abuse he suffered growing

up.  "Counsel thus essentially foreclosed any helpful disclosures from those most likely to know, first-hand, the pertinent facts."  *Cargle v. Mullin*, 317 F.3d 1196, 1210 (10th Cir. 2003).

**Rex Newton, Ph.D.**

The Government asserts that counsel was not ineffective in failing to interview and present testimony by Dr. Newton, a prison psychologist who treated Mr. Purkey in the Oregon State Penitentiary in the 1980's.  The Government's bases are that trial counsel had Dr. Newton's records and provided them to the defense experts.  Brief at 45.

Notably, the Government ignores the fact that counsel never even interviewed Dr. Newton.  Indeed, counsel spent a full nine pages of his affidavit, before the District Court, Appendix "App." 664-673, providing his "reasons" and thinking for the "failure to secure the testimony of Dr. Rex Newton, Ph.D," App. 664.  The *post-hoc* rationalization is patent though because counsel never interviewed Dr. Newton and relied only on his notes in the Oregon Department of Corrections records.  The deficiency in that is obvious:  "counsel could not have evaluated or weighed the risks and benefits of calling [Dr. Newton] as a defense witness without so much as asking [him] what he would say if called."  *Towns v. Smith*, 395 F.3d 251, 260 (6th Cir. 2005).

The Government continues to assert, as it did in the District Court, that the

2

Government "concede[d] Purkey had a bad childhood, and instead argued that 'the abuse excuse' did not mitigate" Mr. Purkey's crimes committed at the age of 46. Brief at 46. Conceding a "bad childhood" is simply not a concession that Mr. Purkey suffered long-term, extensive sexual abuse perpetrated upon him by his own mother. The Government did not concede sexual abuse of any kind. Any argument to the contrary simply flies in the face of the trial record and common sense interpretations. While the testimony is set forth in full in Appellant's Brief, just a few samples make clear that the Government's assertion (based on Mr. Duchardt's assertions) that it conceded that Mr. Purkey was sexually abused, is ridiculous. Specifically, the cross-examination of Dr. Stephen Peterson, a defense psychiatrist, reveals:

> Q    *Now, you talked a long time during your direct examination about the defendant's childhood and the fact that his mom sexually abused him. Do you remember that testimony?*
> A    *Yes.*
> Q    *Now, did you find any records where that was detailed in his past?*
> A    *No. . . .*

Transcript "Tr." 1808 (emphasis added).

> Q    *Doctor, going back to the defendant's childhood and the sexual abuse that he claims he suffered, again we have to rely on his word essentially, because there's not any – there is very little, if anything, in the record to support that, correct?*
> A    *Well, that's correct. . . .*

Tr. 1816 (emphasis added).

<blockquote>
Q    *To your knowledge, based upon your review of the records, the only time the defendant ever told a doctor who has examined him about this sexual mistreatment or maltreatment that he's now claiming is to you, that was the first time?*

A    *To my understanding, I'm the only one he has ever told in detail to because I'm the only one who ever really asked.*
</blockquote>

Tr. 1824 (emphasis added). [1]

Clearly, regardless of the Government's or counsel's belated denials, the overall theme of the Government was that (1) Mr. Purkey made up the allegations of sexual abuse, and (2) he did so after he was facing capital murder charges. The Government's expert, Dr. Dietz, made this extremely clear in response to cross-examination:

<blockquote>
Q    *For a person in prison to say you have been sexually abused by your mother is certainly not a statement in your interest, is it?*

A    *It is when you're facing capital murder charges and have people looking for bad things in your childhood to help use in mitigation.*
</blockquote>

Tr. 2195 (emphasis added).

<blockquote>
Q    *Actually we have kind of – did our homework and got together a lot of records that verify what he's saying; is that correct, sir?*

A    *That's right. For everything but the sexual abuse I think there's plenty of verification.*
</blockquote>

---

[1] The Government also asserts that Dr. Peterson did testify that Mr. Purkey had reported previously that he was sexually abused. Brief at 60 (citing Tr. 1752-53, 1816). That is simply not what Dr. Peterson said, however, on those pages or anywhere else in his testimony. To the contrary, he testified that he was the first person Mr. Purkey talked to in any detail about the "sexual maltreatment." Tr. 1824.

Tr. 2215 (emphasis added).

The Government also asserts that Dr. Newton's testimony would have made no difference because the source of the information that Mr. Purkey was sexually abused by his mother was still Mr. Purkey, thus, still "garbage in, garbage out." Brief at 46. This argument is inflated. Mr. Purkey made the disclosures to Dr. Newton in seeking mental health treatment more than 15 years prior to having pending capital charges. Thus, it was not, as characterized by Dr. Dietz, a self-serving statement made only when Mr. Purkey was "facing capital murder charges" and the defense was "looking for bad things in [his] childhood to help use in mitigation." Tr. 2195.

Finally, the Government asserts that any testimony by Dr. Newton would have resulted in harmful cross-examination about Mr. Purkey being part of a "racial clique" previously and having a "criminal personality." Brief at 47. While this information may have come out in cross-examination, it would simply have been redundant as the Government presented numerous witnesses to assert in aggravation that Mr. Purkey was part of a racist prison gang and has "antisocial personality disorder." *See, e.g.,* Tr. 1346-1348; Tr. 2156; Tr. 2212. Dr. Newton's testimony would have actually mitigated that information by establishing, through a neutral mental health expert, that Mr. Purkey was ashamed of his past behavior and was seeking help to change. App. 294-295.

**Floyd Bose and Dion Leiker**

Notably, the Government does not even attempt to rely on Mr. Duchardt's claims that he had "various opportunities to talk to Dion [Lieker]" and Mr. Bose. App. 673.

**Peggy and Evette Noe**

The Government also does not even attempt to argue that counsel's conduct was not deficient in failing to interview Peggy Marteney Noe and her daughter, Evette Noe. Thus, the Government again seems to disavow Mr. Duchardt's claims that he "did speak, prior to trial, certainly with Peggy, and possibly with Evette." App. 676.

**Other Family Members and Associates**

The Government seems to focus here on asserting that because counsel had at least brief interviews with some witnesses he could not have been ineffective for failing to call them to testify. Brief at 51. The Government ignores, however, counsel's complete misunderstanding in some of these interviews that resulted in counsel not calling potentially helpful background witnesses. For example, counsel cited as reasons not to call Debbie Prothero, Mr. Purkey's cousin, as a witness "that she was personally very much in favor of the death penalty," App. 662, "and was in no way opposed to Wes receiving the death penalty in this case," App. 663). Ms. Prothero, on the other hand, cited as "absolutely wrong," counsel's

recollection that she was not opposed to Mr. Purkey receiving the death penalty. App. 822. She also cited her willingness to testify on his behalf and provided the substance of the testimony that she could have given. App. 823-824.

The Government categorically errs in characterizing potential witness Sam Hoffmeier as a "fellow inmate[]." Brief at 51. Hoffmeier is not an inmate. He is a volunteer prison minister who conducted Bible study groups for inmates. App. 426. He would have provided good character evidence, *id.*, at least as significant as some of the evidence discussed in *Williams v. Taylor*, such as a "certified public accountant" who could have testified based on his visits with the defendant "as part of a prison ministry program." 529 U.S. at 396.

**Prejudice**

In discussing prejudice individual by individual, the Government errs. In determining prejudice due to counsel's failure to present mitigating evidence in sentencing, this Court must "evaluate the totality of the evidence–'both that adduced at trial, and the evidence adduced in the [post-conviction] proceeding[s].'" *Wiggins*, 539 U.S. at 536 (quoting *Williams*, 529 U.S. at 397-98).

The test is not whether the sentencer could have heard all available mitigating evidence and still decided on a death sentence. In other words, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the

7

evidence to have determined the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  Thus, "a defendant need *not* show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693 (emphasis added).

The Court must determine whether the undiscovered "mitigating evidence, taken as a whole, might well have influenced the jury's appraisal" of the defendant's culpability. *Rompilla*, 545 U.S. at 376 (quoting *Wiggins*, 539 U.S. at 538).  "Mitigating evidence unrelated to dangerousness may alter the jury's selection of penalty, even if it does not undermine or rebut the prosecution's death-eligibility case." *Williams*, 529 U.S. at 398.  Prejudice is established if "there is a reasonable probability that *at least one juror* would have struck a different balance" but for counsel's errors.  *Wiggins*, 539 U.S. at 537 (emphasis added).

Here, the Government did not consider the "totality" of the evidence and instead simply engaged in rote cataloguing witness by witness.  For example, the importance of Floyd Bose and Dion Lieker, both former law enforcement officers, is dismissed in one paragraph simply because seven other witnesses testified about Mr. Purkey's "positive character traits" and two correctional officers testified. Response at 30.[2]  When one looks beneath this rote cataloguing, however, the seven witnesses cited by the Government are Mr. Purkey's family members,

---

[2] Peggy and Evette Noe were similarly dismissed by the government.

people who met him in prison, and a prison minister. Testimony by these witnesses does nothing to alleviate the prejudice of not having disinterested, very credible witnesses, such as Dr. Newton, Mr. Bose, and Ms. Leiker, in particular, testify on his behalf.

These witnesses not only could have provided substantial, credible, and humanizing mitigating information in their own right, but their testimony would also have provided substantial relevant corroborating information that would have supported Dr. Peterson's testimony and established that Mr. Purkey did not just "make up" the report of sexual abuse in order to escape the death penalty.

The overall prejudice is clear because the available, but unpresented mitigation evidence was not simply "'new' evidence [that] largely duplicated the mitigation at trial." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1409 (2011). If all of the available mitigating evidence had been presented, "there is a reasonable probability that at least one juror would have struck a difference balance." *Wiggins*, 539 U.S. at 537.

## II.    The District Court's Ruling.

The Government asserts that this Court should not consider the district court's ruling "at all" because it is not included in this Court's grant of a certificate of appealability. It is axiomatic that an appeal to this Court necessitates a review and discussion of the district court ruling being appealed. *See, e.g., Miller-El v.*

*Cockrell*, 537 U.S. 322, 327 (2003) ("a prisoner seeking a COA need only demonstrate 'a substantial showing of the denial of a constitutional right.' 28 U.S.C. § 2253(c). A petitioner satisfies this standard by demonstrating that *jurists of reason could disagree with the district court's resolution….*") (emphasis added). Logically, this can only be accomplished by reviewing–and thereby discussing–the District Court's ruling. *See United States v. DeBerry*, 2011 WL 6145345, *2 n.2 (10th Cir. Dec. 12, 2011) (Section of brief asserting error in the District Court's ruling was "subsumed within" the five issues for which a COA was granted). The Government's effort to strike this argument is spurious, and this Court must reject it.

Substantively, the Government asserts that the District Court did conduct a proper *Strickland* analysis. Brief at 83 (quoting App. 1067-1068). In the section quoted by the Government, however, the Court "weigh[ed] the mitigation case which was presented against the mitigation case which could have been presented." That flies directly in the face of the required analysis, which is to "evaluate the totality of the evidence—'both that adduced at trial, and the evidence adduced in the [post-conviction] proceeding[s].'" *Wiggins*, 539 U.S. at 536 (quoting *Williams*, 529 U.S at 397-398). There is simply nothing in the District Court's order to indicate that this proper analysis was conducted. Indeed, the District Court completely ignored the evidence Mr. Purkey adduced in these

proceedings other than to weigh it against, rather than with, the mitigation adduced at trial.[3]

### III. The Denial of a Hearing.

The Government asserts that the District Court did not err in failing to grant an evidentiary hearing because the Court did not rely on "Mr. Duchardt's affidavit to establish that there were no issues of fact," but relied on it "only for findings of trial strategy." Brief at 87. The problem, however, even assuming the Government's interpretation to be true, is that in order to accept as "true" and "reasonable" Mr. Duchardt's alleged strategies, one must accept as true his statements of the alleged investigation underlying those alleged strategies. As in *Wiggins*, the question is "whether the investigation supporting counsel's decision[s] . . . *was itself reasonable*." *Wiggins*, 539 U.S. at 523 (emphasis in original). For example, Mr. Duchardt claimed strategy in not calling Floyd Bose, Dion Lieker, Peggy Noe, and Evette Noe as witnesses after he interviewed them. All four witnesses adamantly deny that Mr. Duchardt ever even spoke to them. App. 830-833. Thus, even under the Government's interpretation, it is flat out wrong to say that the District Court "resolve[d] the issues on the record and pleadings" without any reliance on Mr. Duchardt's affidavit. Brief at 87.

The Government tries to contort a "__" into a "0" so as to create the illusion

---

[3] The Government repeats this same erroneous argument on page 90 of the Brief.

11

of there being nothing mitigating about Mr. Purkey. *See*, *e.g.*, Brief 93, 100. Respondent states with bold certainty that "no juror found a single mitigating factor." Brief 93. This is much too gratuitous a reading of the record. The jury indicated absolutely no response to any mitigating factor. Instead, the line next to each mitigating factor was simply left blank – i.e., "___." When presented with these blank lines on the verdict, the Government did <u>not</u> argue that the blanks indicated there was no juror that found any mitigating factor. Resorting to such an argument now is disingenuous.

The Government inexplicably directs this Court to *Williams v. Norris*, 612 F.3d 941 (8th Cir. 2010). Not only has Mr. Purkey not presented the errant verdict form as an independent claim, but *Williams* offers no support for the Government's assertion. In *Williams*, the issue was whether trial counsel "was ineffective under *Strickland* for not objecting to the jury's failure to make certain findings concerning mitigating circumstances." 612 F.3d at 955. There, "The trial court initially thought the jury had not found any mitigating circumstances, but the jury foreperson clarified that one mitigating circumstance had been found: inter-generational family dysfunction." *Id*. at n. 8.

Here, when faced with the blanks on the verdict form, the defense <u>did</u> object and request clarification. It was the Government that intervened and convinced the District Court to bury its head in the sand without making the jury fill-in-the-

12

blanks in its verdict.  Tr. 2313.  The blanks as to each and every mitigating factor make it impossible to find that "no juror voted for a single mitigating factor."  The Government insists that the blanks can only be "0" because "jurors are presumed to follow the court's instructions."  Brief 93, *citing United States v. Griffith*, 301 F3d. 880, 884 n.3 (8th Cir. 2002).  *Griffith* does not help the Government.  It involved a much different set of events.  There, the claim was that the jury would have been inflamed by arguments made by the prosecutor.  *Id.*  Griffith's attorney did not object, thus, giving the trial court no real opportunity to remind the jury of its obligation.   Here, the District Court heard an objection, considered a remedy but the Government intervened with its objection that "absolutely no" clarification be obtained.  The Government cannot avoid clarification as a way of pulling itself up by its own bootstraps.  A blank form simply does not permit such a conclusion. *See United States v. Hammer*, 404 F.Supp.2d 676, 801 (M.D. Pa. 2005) ("the jury's defective answers with respect to mitigating factors renders the penalty phase of the trial defective").

### IV.    Failure to Strike Mr. Duchardt's Affidavit.

Again, the Government asserts that this Court "should not consider this issue at all, since the COA did not include this issue."  Brief at 101.  The Government's argument must be rejected because, as was addressed previously in Appellant's Suggestions in Opposition to the Government's Motion to Strike Portions of

Appellant's Brief which is incorporated herein by reference, this is not an issue that requires a COA.

Substantively, the Government asserts that Mr. Purkey "nowhere cites any case, statute, or rule that compels this Court to strike a validly executed affidavit which Mr. Duchardt was ordered to produce." Brief at 103. The Government further asserts that Mr. Purkey cites only "the Restatement of the Law Governing Lawyers" and "the Missouri State Public Defender Guidelines. *Id.* This is clearly not true as Mr. Purkey also relies on F.R.C.P. Rule 56(c)(4) and numerous cases applying the rule.[4]

The Government also asserts that "a lawyer forced to defend himself against 22 allegations that he was ineffective, will respond with legal arguments to explain his trial strategy." Brief at 105. The problem, however, is that Duchardt's legal analysis is not an explanation of his decisions during the trial and sentencing proceedings. It is simply *post hoc* legal argument or expression of legal opinion and not a recitation of a "fact" to which an affiant is competent to testify. *Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985). Indeed, Duchardt's <u>current legal</u> <u>arguments</u> could have played <u>no</u> role in his decision-making during his

---

[4] Rule 56(c)(4) provides, in relevant part: "An affidavit or declaration . . . must be made on personal knowledge, [and] set out facts that would be admissible in evidence. . . ." *See also* Local Rules, United States District Court for the Western District of Missouri, Rule 56.1(a)("All facts on which a motion or opposition is based shall be presented in accordance with Rule 56 of the Federal Rules of Civil Procedure").

representation of Mr. Purkey.  Indeed, he makes no assertion that they did.

## Conclusion

For the reasons set forth above and in Appellant's Brief, this Court must either vacate the death sentence and order a new sentencing or, alternatively, vacate the District Court's judgment and remand for an evidentiary hearing where the 117-page affidavit will be struck.

Respectfully submitted,

Teresa L. Norris, Esq.
Blume Weyble & Norris, LLC
900 Elmwood Avenue, Ste. 101
Columbia, SC 29201
(803) 765-1044  (Phone)
(803) 765-1143  (Fax)
teresa@blumelaw.com
Co-counsel to Movant

/s/ Teresa L. Norris
Teresa L. Norris
Co-counsel to Movant

Gary E. Brotherton, Esq.
601 W. Nifong Blvd., Ste. 1C
Columbia, Missouri  65203
(573) 875-1571  Phone
(573) 875-1572  Fax
GEBrotherton@LegalWritesLLC.com
Co-counsel to Movant

/s/ Gary E. Brotherton
Gary E. Brotherton
Co-counsel to Movant

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type volume limitations by including only 3,369 words, which does not exceed the **7,000** words granted by this Court, excluding parts of the brief exempted by FRAP 32(a)(7)(B)(iii). This brief was typed in size 14 font, Times New Roman and typed using Microsoft Word 2010. The document was scanned for viruses by using Microsoft Security Essentials antivirus program, which reported that no viruses were found.

Respectfully submitted,

Teresa L. Norris, Esq.
Blume Weyble & Norris, LLC
900 Elmwood Avenue, Ste. 101
Columbia, SC 29201
(803) 765-1044 (Phone)
(803) 765-1143 (Fax)
teresa@blumelaw.com
Co-counsel to Appellant

Gary E. Brotherton, Esq.
601 W. Nifong Blvd., Ste. 1C
Columbia, Missouri 65203
(573) 875-1571 Phone
(573) 875-1572 Fax
GEBrotherton@LegalWritesLLC.com
Co-counsel to Appellant

_____/s_____
Teresa L. Norris

**CERTIFICATE OF FILING AND SERVICE**

The undersigned does hereby certify that on May 3, 2012, the foregoing was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Two paper copies will be served by U.S. Mail, postage prepaid, within five days of the Court's notice that the brief has been reviewed and filed to: Kathleen D. Mahoney and David M. Ketchmark, U.S. Attorney's Office, 400 E. Ninth Street, 5th Floor, Kansas, City, MO 64106.

Respectfully submitted,

Teresa L. Norris, Esq.
Blume Weyble & Norris, LLC
900 Elmwood Avenue, Ste. 101
Columbia, SC 29201
 (803) 765-1044  (Phone)
(803) 765-1143  (Fax)
teresa@blumelaw.com
Co-counsel to Appellant

Gary E. Brotherton, Esq.
601 W. Nifong Blvd., Ste. 1C
Columbia, Missouri  65203
(573) 875-1571  Phone
(573) 875-1572  Fax
GEBrotherton@LegalWritesLLC.com
Co-counsel to Appellant

_____/s_____
Teresa L. Norris